THE STATE, EX REL. WARMAN, *v.* BUSHONG, SUPT.

(No. 933—Decided April 8, 1947.)

*Messrs. Rockey & Rockey,* for petitioner.

*Mr. Hugh S. Jenkins,* attorney general, *Mr. H. R. P. Niehoff* and *Mr. Roland B. Lee,* for respondent.

GUERNSEY, J. This is an action in habeas corpus instituted in this court.

Thomas J. Warman, the petitioner herein, was indicted by the grand jury of Hamilton county in 1944 for possessing burglar tools. Thereafter, he was tried before the Common Pleas Court of Hamilton county and convicted of the afore-mentioned felony, the penalty for which, under the provisions of Section 12439, General Code, is imprisonment in the penitentiary not less than one year nor more than five years.

Before imposition of sentence, Warman was ex-

amined by two reputable psychiatric physicians and examiners appointed by the Court of Common Pleas pursuant to the provisions of Sections 13451-19 to 13451-23, General Code (118 Ohio Laws, 686); whereupon, after hearing, the court found that Warman was a mentally defective prisoner as defined in Section 13451-19, General Code (118 Ohio Laws, 686), and on May 18, 1944, pursuant to the provisions of Section 13451-20, General Code (118 Ohio Laws, 687), committed him to Lima State Hospital for the Criminal Insane, for an indefinite period and until such time as he might lawfully be released therefrom.

Thereafter, in 1945, upon application duly filed in the court by the superintendent of Lima State Hospital, the court duly directed that hearing be held regarding the mental condition of the prisoner, and Warman was then duly re-examined by two reputable psychiatric physicians and examiners appointed by the Court of Common Pleas of Hamilton county pursuant to Sections 13451-20 and 13451-22, General Code (118 Ohio Laws, 686), whereupon, hearing having been duly had, the court found that Warman was still a mentally defective prisoner, as defined in Section 13451-19, General Code (118 Ohio Laws, 686); and on June 22, 1945, ordered that he be recommitted to Lima State Hospital for the Criminal Insane for an indefinite period and until he might lawfully be released therefrom.

Thereafter, on March 7, 1947, Warman filed in the Court of Appeals for Allen county, a petition for a writ of habeas corpus, alleging that he is sane and is unlawfully restrained of his liberty by R. E. Bushong, superintendent of Lima State Hospital, respondent herein.

To the writ the respondent filed his return, averring that he has had the petitioner in his custody from May

19, 1944, to March 28, 1945, and from June 26, 1945, to the present time by virtue of the commitment papers aforesaid issued by the Court of Common Pleas of Hamilton county, under the provisions of Section 13451-20, General Code (118 Ohio Laws, 687).

From the return it appears that the time when the petitioner would be eligible for parole upon sentence for the crime of which he was convicted has expired, but that the maximum term of imprisonment prescribed by law for the crime of which he was convicted has not expired.

Assuming that the petitioner is not at this time mentally defective, the question arises as to what jurisdiction, if any, this court has to make such determination as to his mental condition and discharge the petitioner in this proceeding.

Clause 2, of Section 9, Article I of the Constitution of the United States, and Section 8, Article I of the Constitution of Ohio, guarantee the petitioner's right, if unlawfully imprisoned, to a writ of habeas corpus, and it has been uniformly held by the courts of this state and other states that a person committed for an indefinite time or until restored to reason, to a hospital for the insane as insane or mentally defective is entitled to his release therefrom on a writ of habeas corpus upon being found sane at a trial of such proceeding. However, these decisions are largely predicated upon the theory that the courts committing such a person are without jurisdiction to order his release or discharge, and that he has no remedy other than through a writ of habeas corpus to procure his release or discharge.

However, in cases where a person is indicted for a felony under the laws of Ohio, and before trial on such indictment an inquest is held as to his sanity under the provisions of the statutes, and he is found insane

and committed to Lima State Hospital for the Criminal Insane, pursuant to such statutes, he is, upon discharge from the custody of the superintendent of the hospital upon writ of habeas corpus, required to be returned for trial on such indictment.

What jurisdiction the court has and what orders the court shall make where the commitment of the petitioner for writ of habeas corpus is to Lima State Hospital for the Criminal Insane, pursuant to the above-mentioned sections of the statutes, has not been heretofore determined by this court. To make such determination, a consideration of the statutory provisions relating to the subject matter is essential.

The pertinent provisions of the sections of the General Code, above mentioned, were as follows:

"Section 13451-20. When, as to any prisoner awaiting sentence, it has been suggested, or appears to the court, before or during the trial of such prisoner, or after his conviction, that such prisoner is mentally defective, then, upon conviction of such prisoner and before imposition of sentence, the court may, in its discretion, refer such prisoner to the psychiatric clinic of such court, if there be one, or commit such prisoner to a hospital or other institution designated by the court, for the purpose of examination of such prisoner's mental condition, such reference or commitment to be for a period not in excess of ten days. Such examination of such prisoner shall be made by at least two psychiatric examiners or by a psychiatric examiner and a psychologist, and for such purpose the court may, in its discretion, designate psychiatric examiners and psychologists who are on the staff of any such psychiatric clinic. * * * The psychiatric examiners and psychologists so appointed shall, upon notification of their appointment, and acceptance thereof, proceed promptly to make a careful examination of the prison-

er, and shall, upon completion of such examination, report in writing to the court the facts found by them and their interpretation thereof, including their conclusions as to the then mental condition of the prisoner, and such recommendations, suggestions and opinions as in their judgment may be helpful to the court. * * * If, upon consideration of such report and of such other evidence as shall so be submitted to the court, the court shall find that such prisoner is a mentally defective prisoner as defined in this act, and that the welfare and general safety of the community require the indefinite commitment of such prisoner under this act, the court may, in its discretion, in lieu of sentencing such prisoner for the crime of which he has been convicted, enter an order of indefinite commitment of such prisoner to such available institution, maintained by this state or by the county or municipality in which such court exercises jurisdiction, as shall by the court be considered best adapted to carry out the purpose of this act in respect to such mentally defective prisoner. Any such order of indefinite commitment shall constitute a final order. The provisions of law relating to motions for new trial, bail and appeal and error shall be applicable to such cases.'' (118 Ohio Laws, 687.)

''Section 13451-22. At any time after a prisoner has been committed as a mentally defective prisoner to any institution, as provided in this act, but not prior to the time when such prisoner would be eligible for parole upon sentence for the crime of which he was convicted, the superintendent of the institution wherein such prisoner is confined may, with the written consent of a medical officer of such institution, file with the court an application for the release or discharge of such prisoner, which application shall set forth the opinions and findings of such medical officer and superintendent

respecting the then existing mental condition of such prisoner, and upon receipt of such application the court may, in its discretion, direct that a hearing be held regarding the mental condition of such prisoner, in the manner provided by this act regarding prisoners awaiting sentence.

"Upon the expiration of the maximum term of imprisonment prescribed by law for the crime of which any mentally defective prisoner was convicted, and if such prisoner has not theretofore been released or discharged as in this act provided, the court shall, upon application of the superintendent or a medical officer of the institution in which such prisoner is at the time confined, or of such prisoner or his guardian or next friend, direct that a hearing be held regarding the mental condition of such prisoner, in the manner prescribed by this act regarding prisoners awaiting sentence.

"If, upon any hearing provided by this section, the court finds that such prisoner is not, at the time of such hearing, mentally defective, the court shall, if the maximum term of imprisonment prescribed by law for the crime of which such prisoner was convicted has not expired, grant such application upon such terms and conditions as the court shall prescribe and, if such maximum term of imprisonment has expired, shall order the discharge of such prisoner and shall cause any such order of the court to be duly certified to the superintendent of the institution in which such prisoner is confined, and thereupon such superintendent shall carry such order into effect, and upon any such discharge such prisoner shall be entitled to all the rights and allowances provided by law to be granted to other prisoners upon discharge from a penal or correctional institution." (118 Ohio Laws, 689.)

The Ascherman Act, of which the above-mentioned

General Code sections were a part, was changed by the amendment of Sections 13451-19, 13451-20 and 13451-22, the enactment of 13451-22a, and the repeal of Section 13451-21, General Code (121 Ohio Laws, 443, effective on October 11, 1945), and this new act has changed, to some extent, the procedure for the release of a prisoner committed under an indefinite commitment.

However, the petitioner having been committed and recommitted under the old Ascherman Act (118 Ohio Laws, 686), the provisions of the old sections above mentioned constitute an integral part of his commitment and recommitment and govern his rights in the premises nothwithstanding such sections have been repealed and new sections enacted in their place.

It will be noted that under the quoted provisions of the General Code the original commitment in the instant case was in lieu of sentence and constituted a final order so that the Common Pleas Court, after such commitment, was and is without jurisdiction to sentence the petitioner.

It will be noted further that under the provisions of Section 13451-22, General Code (118 Ohio Laws, 686), the Common Pleas Court which committed the petitioner retained jurisdiction after the commitment of the petitioner as mentally defective, not to be exercised prior to the time the petitioner would be eligible for parole upon hearing from time to time during the course of the prisoner's commitment to the hospital, to determine his then existing mental condition, and if he is then found mentally defective to recommit him to the hospital, and if he is found not mentally defective at the time of hearing and prior to the expiration of the maximum term of imprisonment prescribed by law for the crime of which he was convicted, to order his release or discharge upon such terms and condi-

tions as the court shall prescribe; and if, on hearing, after the expiration of the maximum term of imprisonment prescribed by law for the crime of which petitioner was convicted has expired and the petitioner is found not then mentally defective, to order the release and discharge of the petitioner.

It is the clear intent and purpose of those statutory provisions which are not unreasonable and which are not in derogation of any of the petitioner's constitutional rights, that, until the expiration of the maximum term of imprisonment prescribed by law for the crime of which the petitioner was convicted, the petitioner shall remain under the exclusive jurisdiction of the committing court for determination from time to time of his mental condition, and subject to the adjudications of the court with reference thereto, and the orders of the court made on the adjudications, and that the remedy therein prescribed for his release and discharge prior to the expiration of the maximum term is exclusive. This conclusion is reinforced and emphasized by the provisions prescribing that prior to the expiration of such maximum term his release and discharge shall be on terms and conditions prescribed by the committing court.

As the Court of Common Pleas which committed petitioner has retained such jurisdiction, and remedies are prescribed in the sections and provisions of sections hereinbefore quoted, for the release and discharge of petitioner, available from the time the petitioner was eligible for a parole upon the sentence for the crime of which he was convicted, up to and including the time of the expiration of the maximum term of imprisonment prescribed by law for the crime of which the petitioner was convicted, this court is without jurisdiction in a proceeding in habeas corpus to determine the mental condition of the petitioner or to order

his release and discharge from such commitment, at least until the expiration of the maximum term of imprisonment prescribed by law for the crime of which petitioner was convicted. Whether such remedy is available to petitioner after the expiration of such maximum term it is unnecessary to determine, as such maximum term has not yet expired.

It is, therefore, ordered and adjudged that the petition herein be dismissed and that the petitioner be remanded to the custody of R. E. Bushong, Superintendent of Lima State Hospital for the Criminal Insane, to be held in conformity with the commitment and recommitment hereinbefore mentioned.

*Judgment accordingly.*

JACKSON, P. J., and MIDDLETON, J., concur.